UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAWRENCE R. SLAUGHTER,<br><br>Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:15-cv-00392-PAL<br><br>**ORDER**<br><br>(Mot. to Remand – ECF No. 19)<br>(Cross-Mot. Summ. J. – ECF No. 22) |

This matter involves Plaintiff Lawrence R. Slaughter's appeal and request for judicial review of the Acting Commissioner of Social Security, Defendant Nancy A. Berryhill's final decision denying his claims for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–83.[1]

**BACKGROUND**

On May 26, 2011, Plaintiff Lawrence R. Slaughter ("Slaughter") protectively filed applications for a period of disability and disability insurance benefits and Supplemental Security Income (SSI) benefits, alleging disability beginning on September 15, 2009. AR 173–84.[2] He was 57 years old when he applied. AR 32, 51. Mr. Slaughter's work history included jobs in

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to the Federal Rules of Civil Procedure and the Social Security Act, the court therefore substitutes Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit. *See* Fed. R. Civ. P. 25(d) (allowing the automatic substitution of a successor to a public officer who is a party to an action but ceases to hold office while the action is pending); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] AR refers to the Administrative Record (ECF No. 18-1), a certified copy of which was delivered to the undersigned upon the Commissioner's filing of her Answer.

1

telemarketing from 1997 to 1999 and as a patient transporter in a hospital from 2000 to 2009. AR 36. In his application, Slaughter claimed he was unable to work because of: Paget's disease, diabetes, and carpal tunnel syndrome. AR 201. The Social Security Administration (the "Agency") denied his application initially and on reconsideration. AR 120–24.

An administrative law judge ("ALJ") held a hearing on June 26, 2013, where Mr. Slaughter appeared with counsel. AR 48–69. During the hearing, counsel asserted that Slaughter's theory of the case was that he was unable to perform the full range of sedentary work based on his diabetes and pain in his back, hips, and other joints. AR 54–55. In a decision dated January 21, 2014, the ALJ found that Slaughter was not disabled. AR 29–45. Mr. Slaughter requested review of the ALJ's decision by the Appeals Council, but the ALJ's decision became final when the Appeals Council denied review on January 15, 2015. AR 1–7.

On March 4, 2015, Slaughter timely filed his Complaint (ECF No. 1) in federal court, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Commissioner filed her Answer (ECF No. 15) on December 15, 2015. Slaughter filed a Motion to Remand (ECF No. 19), and the Commissioner filed a Cross-Motion for Summary Judgment and Response (ECF Nos. 22, 23). The court has considered the Motion, the Cross-Motion and Response, and Mr. Slaughter's Reply (ECF No. 24).

## DISCUSSION

I. **APPLICABLE LAW**

**A. Judicial Review of Disability Determination**

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides that after the Commissioner has held a hearing and rendered a final decision, a disability claimant may seek review of that decision by filing a civil lawsuit in a federal district court in the judicial district where the disability claimant lives. 42 U.S.C. § 405(g). The statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). But the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012)); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (stating that substantial evidence is "more than a mere scintilla but less than a preponderance"). In determining whether the Commissioner's findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). When the evidence will support more than one rational interpretation, a court must defer to the Commissioner's interpretation. *Shaibi*, 883 F.3d at 1108 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Consequently, the issue before a court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence and free of legal error. *Id.* (citing 42 U.S.C. § 405(g); *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016)).

It is incumbent upon an ALJ to make specific findings so that a court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). Mere cursory findings of fact without explicit statements about what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). An ALJ's findings should be comprehensive, analytical, and include a statement explaining the "factual foundations on which the ultimate factual conclusions are based." *Id.*; *see also Vincent v. Heckler*,

739 F.2d 1393, 1394–95 (9th Cir. 1984) (an ALJ need not discuss all the evidence in the record, but must explain why significant probative evidence has been rejected).

### B. Disability Evaluation Process

A claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant must provide specific medical evidence to support his or her claim of disability. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). If a claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *See Molina*, 674 F.3d at 1110 (noting that a claimant bears the burden of proof until the final step in the evaluation process).

## II. THE ALJ'S DECISION

An ALJ follows a five-step sequential evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step an ALJ makes a finding of disability or non-disability, no further evaluation is required. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the ALJ followed the five-step sequential evaluation process and issued an unfavorable decision on January 21, 2014 (the "Decision"). AR 29–45. Mr. Slaughter does not challenge the ALJ's findings at steps one through three, but asserts legal error at step four. More specifically, he argues that (1) the ALJ's RFC assessment failed to properly account for his obesity, and (2) the ALJ failed to properly evaluate his subjective complaints. Slaughter claims he is capable of no more than sedentary exertion. Although he acknowledges that his past relevant work as a telemarketer was sedentary, he "maintains that due to the impact of his pain, he would not be able to perform his past relevant work or any other work on a full-time, consistent basis."

/ / /

/ / /

The parties stipulate that the ALJ fairly and accurately summarized the evidence and testimony of record in the Decision, except as specifically addressed in their arguments. *See* Pl.'s Mot. (ECF No. 19) at 5; Comm'r's Cross-Mot. & Resp. (ECF Nos. 22, 23) at 2.

**A. Step One**

The first step of the disability evaluation requires an ALJ to determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b). If the claimant is currently engaging in substantial gainful activity, then a finding of not disabled is made. If the claimant is not engaging in substantial gainful activity, then the analysis proceeds to the second step.

At step one in the Decision, the ALJ found that Slaughter had not engaged in substantial gainful activity since September 15, 2009, the alleged onset date. AR 34. Given Mr. Slaughter's lack of substantial gainful activity, the ALJ's analysis proceeded to the second step.

**B. Step Two**

The second step of the disability evaluation addresses whether a claimant has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985), SSR 96-3p, 61 Fed. Reg. 34468 (July 2, 1996); SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996).[3] If a claimant does not have a severe medically-determinable impairment or combination of impairments, then an ALJ will

/ / /

---

[3] SSRs are the Agency's official interpretations of the Act and its regulations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). SSRs are entitled to some deference as long as they are consistent with the Act and Agency regulations. *See Bray*, 554 F. 3d at 1223. "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Id*. at 1224.

make a finding that a claimant is not disabled. If a claimant has a severe medically-determinable impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

At step two in the Decision, the ALJ found that Slaughter had the following severe impairments: (i) back disorder and compression, (ii) history of Paget's disease, (iii) diabetes mellitus, (iv) hypertension, (v) gout, (vi) history of left carpal tunnel release with no residuals, and (vii) obesity. AR 34. Because Mr. Slaughter had multiple severe medically-determinable impairments, the ALJ proceeded to the third step.

The ALJ also noted that he had considered the Agency regulation related to obesity. AR 35 (citing SSR 02-1p, 67 Fed. Reg. 57859 (Sept. 12, 2002)). Mr. Slaughter testified that he weighed 254 pounds and was 6' tall; however, the ALJ found no evidence that Slaughter experienced any end-organ disease. AR 35. The ALJ stated that the functional limitations adopted in the Decision accounted for Slaughter's weight and its effect on his ability to ambulate as well as his other body systems. *Id*.

**C. Step Three**

Step three of the disability evaluation requires an ALJ to determine whether a claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to as the "Listings." 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826. If a claimant's impairment or combination of impairments meet or equal the criteria of the Listings and meet the duration requirement, 20 C.F.R. §§ 404.1509, 416.909, then an ALJ makes a finding of disability. 20 C.F.R. §§ 404.1520(h), 416.920(h). If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step.

At step three in the Decision, the ALJ found that no treating or examining physician stated findings equivalent in severity to the criteria of any listed impairment. AR 35. Thus, the ALJ concluded that Slaughter did not have an impairment or combination of impairments that meet or medically equal one of the impairments described in the Listings. *Id*. As such, the ALJ's analysis continued to Mr. Slaughter's residual functional capacity ("RFC").

**D. Step Four – RFC**

The fourth step of the disability evaluation requires an ALJ to determine whether a claimant has the RFC to perform his past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record. An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

After considering the entire record, the ALJ concluded that Mr. Slaughter had the RFC to perform "the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) - he can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and walk 4 hours *each* in an 8-hour workday, and sit 6 hours in an 8-hour workday." AR 35. In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and the other evidence." *Id*. He also considered opinion evidence. *Id*.

1. Credibility

The ALJ found Slaughter's subjective pain complaints partially credible, but held that his ability to participate in certain activities of daily living undermined the credibility of his allegations of disabling functional limitations. AR 39. Mr. Slaughter testified that, due to his conditions, his

friend did his laundry and house cleaning. AR 36, 59. He stated he could not stand or walk more than 45 minutes; he could not sit for more than an hour and a half; and he could not lift more than 20 pounds. AR 59. In an exertional daily activities questionnaire, Mr. Slaughter noted that his pain made it hard for him to walk, stand, sit, and stoop AR 221. However, he reported that he could shop for groceries once a month and clean his living area. AR 222. He also testified that he could drive an automatic vehicle and spent time reading. AR 58–59. The ALJ found that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." AR 36.

2. Medical Symptoms

The ALJ discussed the treatment of Slaughter's Paget's disease, carpel tunnel syndrome, low back and hip pain, knee pain, hypertension, gout, and diabetes. AR 36–37 (citing AR 259–60, 265, 284, 286, 349–50, 383–86, 390). The ALJ noted that Mr. Slaughter's treating physician, Anthony Sommer, M.D., instructed Slaughter to "reduce his food portions and lose weight in relation to his diabetes mellitus and obesity." AR 37 (citing AR 402). The ALJ found that the credibility of Slaughter's allegations regarding the severity of his symptoms and limitations was diminished because those allegations were greater than expected in light of the objective evidence of record. AR 37. The Decision states that the positive objective clinical and diagnostic findings after the alleged onset date did not support more restrictive functional limitations than what the ALJ assessed. *Id*.

**E. Step Four – Ability to Perform PRW**

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform his PRW. 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work a claimant performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b). In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965. If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

At step four in the Decision, the ALJ concluded that Mr. Slaughter is capable of performing his PRW as a telemarketer, which is performed at a sedentary level of exertion with a specific vocational profile ("SVP") of 3 per the vocational expert's testimony. AR 39.[4] After comparing Slaughter's RFC with the physical and mental demands of his PRW, the ALJ found that Slaughter is able to perform his PRW as it is generally performed. *Id*. As a result, he found that Slaughter is not disabled.

Because the ALJ found that Mr. Slaughter is able to perform his PRW, the ALJ further determined that he has not been disabled from September 15, 2009, through the date of the Decision. AR 39. As such, there was no need to proceed to the fifth step.

## ANALYSIS AND FINDINGS

### I. SLAUGHTER WAIVED THE ISSUE OF OBESITY BY FAILING TO RAISE IT BELOW

Mr. Slaughter seeks reversal and remand of the ALJ's decision on the grounds that the ALJ failed to properly evaluate the effect of his obesity taken together with his other severe impairments. Pl.'s Mot. (ECF No. 19) at 6–9. However, the issue of obesity was not raised in his applications before the Agency or during his administrative hearing before the ALJ. In his application, Slaughter claimed he was unable to work because of: Paget's disease, diabetes, and carpal tunnel syndrome. AR 201. During the June 2013 hearing, counsel asserted that Slaughter's theory of the case was that he was unable to perform the full range of sedentary work based on his diabetes and pain in his back, hips, and other joints. AR 54–55. After the hearing, counsel submitted proffer correspondence asserting, "Mr. Slaughter meets the requirements of Listing 1.02 regarding major dysfunction of a joint." AR 246–47. Slaughter's motion to remand does not claim he meets the requirements for Listing 1.02.

An unfavorable decision was issued in January 2014. The ALJ determined that Slaughter's functional limitations take into account obesity. AR 35. In correspondence to the Appeals Council, dated November 3, 2014, counsel argued for the first time, "Taking into account the obesity, Mr. Slaughter lacks the capacity for the prolonged standing and walking required of light

---

[4] The Dictionary of Occupational Titles (DOT) describes Mr. Slaughter's PRW as "telephone sales." AR 68 (citing DOT 299.357-014).

work." AR 250 (emphasis added). Slaughter now argues the ALJ's "cursory discussion of obesity does not satisfy the requirements of Social Security Ruling 02-1p." Pl.'s Mot. at 8. Although the ALJ found obesity to be a severe impairment, he provided no meaningful analysis of the effect of obesity upon Slaughter's ability to perform routine movement and necessary physical activity within the work environment as required by SSR 02-1p. Reply (ECF No. 24) at 4.

When claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (quoting *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (internal quotations omitted)). This rule upholds the "fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court." *Id.* Such waiver is also consistent with the Social Security Act, which provides that "a reviewing court presented with new evidence may remand to the agency for consideration of that evidence, but only upon a showing of 'good cause for the failure to incorporate such evidence into the record in a prior proceeding'." *Id.* (quoting 42 U.S.C. § 405(g)).

Here, the record demonstrates that counsel did not present the issue of obesity to the Agency or the ALJ. Mr. Slaughter has not shown good cause, or suggested any reason at all, for failing to raise the obesity issue below.

## II. THE ALJ FAILED TO PROVIDE CLEAR AND CONVINCING REASONS FOR DISCREDITING MR. SLAUGHTER'S CREDIBILITY

Mr. Slaughter also seeks reversal and remand of the ALJ's decision on the grounds that the ALJ failed to properly assess his credibility. Pl.'s Mot. at 9–14. Slaughter testified as to his impairments and limitations. *Id.* at 11 (citing AR 53, 55–65). The medical evidence demonstrated the existence of medically determinable impairments affecting his ability to perform the requirements of work activity. *Id.* This met his burden of demonstrating the existence of a condition that would cause some degree of limitation. *Id.* Slaughter argues the ALJ erroneously found Slaughter not credible despite the presence of Slaughter's reasonable and medically supported testimony. *Id.* The ALJ discounted Slaughter's testimony due to the extent of his daily activities. *Id.* at 12 (citing AR 36). However, the ALJ made no attempt to explain a nexus between

Slaughter's activities and the rigors of full-time work activity. *Id*. (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a "specific finding" regarding a transferable activity "may be sufficient to discredit an allegation of disabling excess pain")). Because Slaughter's activities did not rise to the level of full-time work activity, the ALJ's articulations were insufficient. Furthermore, the ALJ improperly discounted Slaughter's credibility due to a lack of objective evidence because this reason alone cannot form the basis of the ALJ's credibility determination. *Id*. at 13 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (" 'Excess pain' is, by definition, pain that is unsupported by objective medical findings.")); *see also* Reply at 7. If properly credited, Mr. Slaughter's testimony demonstrates that he cannot work full-time. Thus, remand for payment of benefits is appropriate. In the alternative, the court should remand this matter for further administrative proceedings.

The Commissioner asserts that the ALJ properly assessed Slaughter's credibility and determined that he is not disabled. Cross-Mot. & Resp. at 7–10. As a threshold matter, the Commissioner notes that the ALJ did not completely discount Slaughter's complaints of pain. *Id*. at 8. Rather, he found them only partially credible. The Commissioner argues that the ALJ determined Slaughter capable of only light-exertion work, as opposed to work requiring greater exertion, in the context of his subjective complaints and in accordance with certain physicians' opinions. *Id*. (citing AR 39). The Decision noted Slaughter's improvement in the pain associated with gout and bursitis, as well as objective medical findings of normal motor strength, sensation, reflexes, and the ability to walk without difficulty as reasons that the medical record did not support the degree of limitations Mr. Slaughter alleged. *Id*. at 8–9. Additionally, the Commissioner maintains that the ALJ properly relied on the medical opinion evidence, including the findings of examining physicians, which did not support disability and further undermined Slaughter's credibility. The Commissioner also asserts that the ALJ properly found that Slaughter's admitted ability to do his own grocery shopping and cleaning undermined his complaints of disabling pain. *Id*. at 9–10 (citing AR 36). Because Mr. Slaughter identified no error in the ALJ's adverse credibility determination, the Commissioner argues that the court should uphold it.

The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *see also Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). In this first step, a claimant need only show that his or her impairment could reasonably have caused *some degree* of the symptom alleged. *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms or produce objective medical evidence of the pain, fatigue, or the severity thereof. *Id*.

If a claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of his symptoms "by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). As the Ninth Circuit has recognized, this is not an easy requirement to meet because the "clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015. However, "the ALJ is not required to believe every allegation of disabling pain," otherwise disability benefits "would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603).

In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Id.* (quoting *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). For example, an ALJ may consider factors such as: (i) inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; (ii) whether the claimant engages in daily activities inconsistent with the alleged symptoms; or (iii) functional restrictions caused by the symptoms. *Molina*, 674 F.3d at 1112; *Rounds*, 807 F.3d at 1006; *Smolen*, 80 F.3d at 1284.

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

grounds and did not arbitrarily discredit a claimant's testimony regarding pain'." *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell*, 947 F.2d at 345–46). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Rounds*, 807 F.3d at 1006 (an ALJ must specify "which symptom testimony is not credible and what facts in the record lead to that conclusion") (quoting *Smolen*, 80 F.3d at 1284). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning" that will allow a reviewing court "to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

The court finds the ALJ' failed to provide specific, clear and convincing reasons for rejecting Slaughter's testimony about the severity of his symptoms. Mr. Slaughter satisfied the first step of the credibility analysis by presenting objective medical evidence of underlying impairments that could reasonably have caused some degree of his alleged symptoms. *See* AR 36–37. The ALJ did not find evidence of malingering. AR 36–39; *see also* AR 444 (consultative examination finding "no evidence to suggest symptom magnification").

The ALJ found Slaughter's subjective pain complaints only partially credible, because his ability to shop for groceries once a month, clean his living area, drive an automatic vehicle, and spend time reading undermined the credibility of his allegations of disabling functional limitations. AR 36 (citing 58–59, 221). The ALJ found, without providing any explanation or analysis that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." AR 36. The ALJ's credibility determination did not find inconsistencies in Slaughter's testimony or statements, or that he failed to seek appropriate treatment or comply with prescribed treatment.

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at

13

1016 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). The Ninth Circuit recently found that "[h]ouse chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's home, as well as occasional shopping outside the home, are not similar to typical work responsibilities." *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that a claimant's activities of daily living would have a bearing on her credibility only if her level of activity were inconsistent with her claimed limitations. *Garrison*, 759 F.3d at 1016 (quoting *Reddick*, 157 F.3d at 722). When an ALJ finds that a claimant's daily activities are consistent with regularly attending a full-time job, the ALJ must explain why those particular activities establish that the claimant has the ability to maintain regular attendance at work. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017).

Here, the ALJ provided no explanation as to why Slaughter's ability to shop for groceries once a month, clean his living area on occasion, drive a car, and read novels establish that he had the ability to perform full-time work. *See* AR 36, 59–60. The ALJ merely concluded that the abilities and social interactions required for these activities are the same as those required for full-time work. The court finds that the ALJ's failure to explain how these activities were transferable to a work environment is reversible error.

Furthermore, the ALJ's credibility finding cherry-picked the record to discredit Slaughter's testimony, finding that there was a lack of objective medical evidence to support his complaints. "Occasional symptom-free periods are not inconsistent with disability, and an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence." *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017) (quoting *Lester v. Chater*,

14

81 F.3d 821, 833 (9th Cir. 1995)), *Robbins*, 466 F.3d at 883 (internal quotation marks and alterations omitted)). The ALJ partially discredited Mr. Slaughter's claims that, among other things, he could not stand or walk more than 45 minutes, sit for more than an hour and a half; or lift more than 20 pounds, AR 59, because the "positive objective clinical and diagnostic findings since the alleged onset date detailed above do not support more restrictive functional limitations than those assessed" by the ALJ. AR 37. Mr. Slaughter presented objective medical evidence of underlying impairments that could reasonably have caused some degree of his alleged symptoms, and there was no evidence of malingering. *See* AR 36–39.

The Decision references isolated instances of improvement to show that the record did not support the severity of Mr. Slaughter's symptoms. AR 36–37 (citing AR 284, 356, 390, 439). However, viewing the record as a whole, instances of improvement were sparse, and the record was replete with reports of Slaughter's chronic pain. *See* AR 264–73, 284, 289–291, 310–13, 315, 318, 349, 359, 362–63, 380, 389–90, 392–93, 402–03, 408–09, 414–15, 420, 423, 429–30, 439–40. Notably, the ALJ relied on an April 3, 2013 treatment note by Dr. Sommer to show that Slaughter's "diabetes was improved." AR 37 (citing AR 439). But the same treatment note also states that Slaughter's gout was worse, his obesity was severe, his hypertension was uncontrolled, and he suffered from chronic pain. AR 439. The ALJ failed to provide specific, clear and convincing reasons for discounting Mr. Slaughter's testimony as to the severity of his symptoms.

Slaughter asks the court to apply the credit-as-true rule and remand for an award of benefits. However, this is "a rare and prophylactic exception to the ordinary remand rule" that applies only "when there is no question that a finding of disability would be required if the claimant's testimony is accepted as true." *Leon v. Berryhill*, 880 F 3d 1041 (9th Cir. 2017). Typically, a social security case should be remanded when "additional proceedings can remedy defects in the original administrative proceeding." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). "The Social Security Act, however, makes clear that courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing'." *Garrison*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)). Accordingly, the Ninth Circuit has recognized that "in appropriate

circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Id.* The three-part test for such circumstances is known as the "credit-as-true" rule:

> First, we ask whether the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." [*Garrison*, 759 F.3d] at 1020. Next, we determine "whether there are 'outstanding issues that must be resolved before a disability determination can be made,' ... and whether further administrative proceedings would be useful." *Treichler* [*v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)] *quoting Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability. *Id.*

*Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). However, even if the court reaches the third step and credits the claimant's testimony as true it is still within the court's discretion either to make a direct award of benefits or remand for further proceedings. *Id.*

Mr. Slaughter asserts the court should credit his testimony as true and award benefits. The credit-as-true rule "permits, but does not require, a direct award of benefits on review but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful." *Id.* at 1044. An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule. *Id.* (citing *Treichler*, 775 F.3d at 1100). Here, the court has determined the ALJ failed to provide failed to provide specific, clear and convincing reasons for rejecting Slaughter's testimony. However, the rare circumstances that justify an award are not present in this case. The court has a serious doubt as to whether Slaughter was in fact disabled. A remand for further administrative proceedings would be useful in this case. *See Leon*, 880 F.3d at 1047 (noting that remand is useful where "the presentation of further evidence . . . may well prove enlightening in light of the passage of time," regarding whether the claimant's symptoms are or would be significantly reduced with proper medical treatment) (quoting *Treichler*, 775 F.3d at 1101); *Brown–Hunter v. Colvin*, 806 F.3d 487, 495–96 (9th Cir. 2015) (although the ALJ committed legal error, further administrative proceedings were useful because questions existed about the extent to which the claimant's symptoms rendered her disabled).

# **CONCLUSION**

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a whole, and resolve conflicts in the evidence and differences of opinion. Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is not supported by substantial evidence and remands this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

Accordingly,

**IT IS ORDERED:**

1. The Clerk of Court shall **SUBSTITUTE** Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.
2. Plaintiff Lawrence R. Slaughter's Motion for Reversal and/or Remand (ECF No. 19) is **GRANTED**.
3. The Commissioner's Cross-Motion for Summary Judgment (ECF No. 22) is **DENIED**.
4. This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

Dated this 30th day of March, 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE